## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JESSICA MAEZ,**

        **Plaintiff,**

        **vs.**                                       **Civ. No. 24-882 JB/JFR**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration,**

        **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed October 30, 2024, in connection with Plaintiff's *Opposed Motion to Reverse or Remand,* filed January 24, 2025. Doc. 17. On April 10, 2025, Defendant filed a Response. Doc. 23. On April 18, 2025, Plaintiff filed a Reply. Doc. 24. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is well-taken and recommends that it be **GRANTED**.

### I. Background and Procedural Record

Plaintiff Jessica Maez ("Ms. Maez") alleges that she became disabled on December 31, 2016, at the age of forty-three years and eight months, because of bipolar disorder, attention

---

[1] On September 11, 2024, United States District Judge James O. Browning entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 9.

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

deficit/hyperactivity disorder, learning disability, anxiety, lack of concentration, and forgetfulness.  Tr. 287.  Ms. Maez completed high school having received special education throughout her schooling related to learning disabilities.  Tr. 288.  Ms. Maez has worked as a caregiver (family member), food preparer (public schools), and valet attendant (casino).  Tr. 276. Ms. Maez stopped working on June 15, 2011, because of her alleged impairments.  Tr. 287.

On December 20, 2021, Ms. Maez protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*  Tr. 235-41, 242-48.  On October 26, 2022, both applications were denied.  Tr. 119, 120, 121-28, 129-36, 163-66.  On June 30, 2023, Ms. Maez's applications were denied at reconsideration.  Tr. 137-45, 146, 147, 148-56, 170-72, 173-75.  Ms. Maez requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 20, 2024.  Tr. 96-118, 177.  Ms. Maez appeared *pro se*.[3]  *Id.*  On March 21, 2024, ALJ David Wurm issued an unfavorable decision.  Tr. 96-118.  On July 10, 2024, the Appeals Council issued its decision denying Ms. Maez's request for review and upholding the ALJ's final decision.  Tr. 18-23.  On September 4, 2024, Ms. Maez timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

Ms. Maez argues (1) that the Appeals Council should have considered the additional evidence she submitted during its review, *i.e.,* Clifford O. Morgan, Ph.D.'s April 23, 2024, Psychological Evaluation Report and June 11, 2024, Medical Source Statement regarding Ms. Maez's ability to do work-related mental activities; and (2) that the ALJ held that the opinions of state agency psychological consultants were persuasive and without explanation

---

[3] Ms. Maez is represented in these proceedings by Attorney Benjamin Decker.  Doc. 1.

failed to include limitations pertaining to supervisors and work attendance in the RFC.  Doc. 17 at 19-23.  For the reasons discussed below, the Court finds the Appeals Council failed to consider the additional evidence Ms. Maez submitted during its review.  The Court, therefore, recommends that this matter be remanded for review of the additional evidence as required under 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

## II.  <u>Applicable Law</u>

### A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.    Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir.

4

2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III. <u>Analysis</u>

The ALJ determined that Ms. Maez met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since her alleged onset date. Tr. 82. He found that Ms. Maez has severe impairments of major depressive disorder, generalized anxiety/panic disorder, attention-deficit hyperactivity disorder, and learning disorder. *Id.* The ALJ found Ms. Maez's obesity to be non-severe. Tr. 83. The ALJ determined that Ms. Maez's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 83-86. Accordingly, the ALJ proceeded to step four and found that Ms. Maez had the

residual functional capacity to perform a full range of work at all exertional levels but with the

following non-exertional limitations:

> understand, remember, and carry out simple instructions in a non-production-pace
> environment; occasionally interact with the public or coworkers; and occasionally
> adapt to changes in a routine work setting.

Tr. 86-89.  The ALJ determined that Ms. Maez was not capable of performing her past relevant

work, but considering her age, education, work experience, and residual functional capacity, that

there were jobs that existed in significant numbers in the national economy Ms. Maez could

perform.[5]  Tr. 90-91.  The ALJ determined, therefore, that Ms. Maez was not disabled.  Tr. 91.

A.   **Evidence Related to Ms. Maez's Ability To Do Work-Related Mental
     Activities**

1.   **Clifford O. Morgan, Ph.D.**

On November 11, 2010, based on a referral by La Buena Vida, Ms. Maez presented to

Clifford O. Morgan, Ph.D., for psychological evaluation to possibly rule out a learning disability.

Tr. 361-66.  Ms. Maez reported she was unemployed and had difficulty keeping a job.  *Id.*

Dr. Morgan took various histories and administered several psychological tests.  *Id.*  Dr. Morgan

concluded that

> [r]esults of the evaluation confirm that Jessica does have several types of learning
> problems.  She has difficulty with Working Memory which suggests an auditory
> processing problem.  This affects Jessica's ability to listen to information, retain
> the information accurately, process the information and respond accurately.  Most
> recently, Jessica had difficulty working as a waitress. . . .  However, on jobs which
> do not require quick responses and use of auditory processing, Jessica has been
> successful.  Two of these jobs involved auto valet and home health care.  Results
> of the evaluation also indicate that Jessica has both depression and anxiety as well
> as problems with attention and hyperactivity.

---

[5] The VE expert identified representative occupations of Housekeeping Cleaner (DOT code 323.687-014, light
exertion, unskilled, 175,699 jobs nationally); Silver Wrapper (DOT code 318.687-018, light exertion, unskilled, 7,883
jobs nationally); and Marker (DOT code 209.587-034, light exertion, unskilled, 153,329 jobs nationally).  Tr. 91

Tr. 365.  Dr. Morgan recommended that Ms. Maez be referred to the New Mexico Division of

Vocational Rehabilitation and refer herself back to La Buena Vida for counseling.  *Id.*

Dr. Morgan made Axis I diagnoses of Reading Disorder, Mathematics Disorder, Depressive

Disorder, Anxiety Disorder NOS, and Attention-Deficit/Hyperactivity Disorder; Axis III

diagnoses of psychosocial and environmental problems, educational problems, occupational

problems, and economic problems; and an Axis V GAF of 65.[6]

The ALJ did not evaluate Dr. Morgan's November 11, 2010, Psychological Evaluation as

medical opinion evidence or reference it in his determination.

### 2.   Susan M. Flynn, Ph.D.

On August 26, 2013, based on a referral by New Mexico Disability Determination

Services, Ms. Maez presented to Susan M. Flynn, Ph.D., for psychological evaluation.  Tr. 368-

70.  Dr. Flynn took various histories and conducted a mental status exam.  *Id.*  Dr. Flynn

assessed Ms. Maez's current level of functioning as follows:

> Ms. Maez is forty years old with several learning disabilities.  She graduated from
> high school with all special education classes.  She has had a few jobs but is limited
> in her ability to comprehend instructions and recall them.  She process[es]
> information slowly and could not do the quick work required of a waitress at
> Denny's.  She is able to perform the tasks of personal hygiene and helps around the
> house.  Her mother gives her a written list of chores to do each day and Jessica does
> them.  Without the list she forgets.  She likes to cook.  She cares for her sixteen
> year-old son.  She feels anxious when she does not know how to do something.

---

[6] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's
overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed.
2000) at 32.  A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia), or
some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household),
but generally functioning pretty well, has some meaningful interpersonal relationships.  *See* Am. Psychiatric Ass'n,
Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000) at 34.

Tr. 370.  Dr. Flynn made Axis I diagnoses of Anxiety Disorder NOS and Attention-Deficit/Hyperactivity Disorder; Axis II diagnosis of Borderline Intellectual functioning per 2010 report; Axis IV problems of employment; and an Axis V GAF of 55.[7]

The ALJ did not evaluate Dr. Flynn's Psychological Evaluation as medical opinion evidence or reference it in his determination.

### 3.    Chase M. Poe, Psy.D.

On September 22, 2022, referred by New Mexico Disability Determination Services, Ms. Maez presented to Chase M. Poe, Psy.D., for a mental status examination and cognitive testing.[8]  Tr. 423-25.  Dr. Poe observed that Ms. Maez's speech was a regular rate and rhythm with no articulation problems, that Ms. Maez was cooperative and pleasant, that she was alert and oriented, her judgment and insight were fair, and that her attention and concentration were good during the interview and testing.  *Id.*  Dr. Poe's cognitive testing results indicated Ms. Maez's

> overall abilities are within the Borderline range compared to other people her age.  Her verbal comprehension falls within[] the Low Average range.  Her perceptual reasoning and processing speed all fall within the Borderline range.  While her working memory falls within the Extremely Low range.

*Id.*  Dr. Poe diagnosed learning disorder, unspecified, attention-deficit/hyperactivity disorder, generalized anxiety disorder, and depressive disorder.  *Id.*  Dr. Poe assessed that

---

[7] A GAF score of 51-60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at  34.

[8] Dr. Poe administered a *Wechsler Adult Intelligence Scale | Fourth Edition (WAIS-IV)*.  Tr. 425.  Results demonstrated Full Scale IQ 70 (percentile rank 2); Verbal Comprehension Index 83 (percentile rank 13); Perceptual Reasoning Index 75 (percentile rank 5); Working Memory Index 63 (percentile rank 1); and Processing Speed Index 71 (percentile rank 3).  Tr. 429.  Dr. Poe summarized that "Ms. Maez' overall abilities are within the Borderline range compared to other people her age.  Her verbal comprehension falls within the Low Average range.  Her perceptual reasoning and processing speed all fall within the Borderline range.  While her working memory falls within the Extremely Low range."  *Id.*

> [w]ith regard to her mental status, Ms. Maez is able to understand and remember
> basic instructions.  She will likely have moderate-to-severe difficulty concentrating
> and persisting at tasks of basic work, interacting with the general public and/or
> coworkers, as well as adapting to changes in the workplace secondary to her
> presenting symptoms.

Tr. 425.

The ALJ found Dr. Poe's assessment "partially persuasive to the extent of its limitation

of the claimant to basic (i.e. simple) instructions, a limitation both generally supported by

Dr. Poe's objective findings [] and generally consistent with other medical evidence."  Tr. 89.

The ALJ explained that the record as a whole establishes Ms. Maez's ability to sustain work

activity in a "non-production-pace environment with occasional interpersonal interaction and

occasional workplace changes."  *Id.*  In support, the ALJ notes Dr. Poe's "rather benign objective

findings on mental status examination" and various primary care provider treatment records

noting "essentially normal [psychiatric] findings" on exam.[9]  *Id.*  The ALJ further notes that

Ms. Maez reported having friends, accomplishing chores given to her by her mother,

independently completing her personal care, taking care of pets, shopping with her mother in

stores, going to the movies with her mother, and getting along with authority figures.  *Id.*

### 4.    Meagan C. Parmley, Ph.D.

On October 26, 2022, nonexamining State agency psychological consultant Meagan C.

Parmley, Ph.D., reviewed the medical evidence record at the initial level of review.[10]  Tr. 123-24,

---

[9] The ALJ cites primary care provider treatment notes from Los Lunas Family Practice that noted on physical exam*, inter alia*, that Ms. Maez was "oriented to person, place, and time, and had normal mood and affect," that her ADD "does not limit activities," and/or that Ms. Maez "was able to demonstrate good judgment and reason."  Tr. 89 (citing Tr. 386, 387, 398, 441, 447, 458, 462, 474, 479, 483).

[10] Dr. Parmley indicates she reviewed Dr. Poe's consultative exam report, Ms. Maez's Function Report, a Third-Party Function Report (prepared by Ms. Maez's mother), and treatment notes from Los Lunas Family Practice (which included Dr. Morgan's November 11, 2010, Psychological Evaluation).  Tr. 122-24, 131-32.

131-32.  Dr. Parmley prepared a Psychiatric Review Technique ("PRT")[11] and rated the degree of Ms. Maez's functional limitation in understanding, remembering, and applying information as *moderate*; interacting with others as *moderate*; concentrating, persisting, or maintaining pace as *moderate*, and adapting or managing oneself as *moderate*.  *Id.*

Dr. Parmley also prepared a Mental Residual Functional Capacity Assessment ("MRFCA") in which she found in Section I that Ms. Maez was *not significantly limited* in her ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) make simple work-related decisions; (6) ask simple questions or request assistance; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (9) be aware of normal hazards and take appropriate precautions.  Tr. 125-26, 133-34.  Dr. Parmley also found that Ms. Maez was *moderately limited* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or in proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest; (7) interact appropriately with the general public; (8) accept

---

[11] "The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

instructions and respond appropriately to criticism from supervisors; (9) respond appropriately to changes in the work setting; and (10) set realistic goals or make plans independently of others. *Id.* Dr. Parmley found that Ms. Maez was *markedly limited* in her ability to travel in unfamiliar places or use public transportation. *Id.*

> In Section III, Dr. Parmley assessed that
>
> [t]he totality of the MER suggests that the clmnt is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a routine work setting. A workplace w/well-defined expectations and limited interpersonal interactions is recommended.

*Id.*

The ALJ found Dr. Parmley's assessment "largely persuasive" in light of its general support by the evidence to which Dr. Parmley referred. Tr. 88-89. The ALJ explained that "the residual functional capacity herein determined for the claimant for a limited range of light work better captures the entirety of her limitations when considered in the context of the evidence as fully developed at the hearing level, which as described above established her functional capacity to sustain work involving simple instructions in a non-production-pace environment with occasional interpersonal interaction and occasional workplace changes." Tr. 89. The ALJ supported her evaluation by citing the Los Lunas Family Practice treatment notes[12] and activities of daily living as reported in Ms. Maez's Function Report. *Id.*

### 5.   Mark C. McGaughey, Ph.D.

On June 30, 2023, nonexamining State agency psychological consultant Mark C. McGaughey, Ph.D., reviewed the medical evidence record at reconsideration.[13] Tr. 138-44.

---

[12] *See* fn. 9, *supra*.

[13] Dr. McGaughey indicates he reviewed Dr. Poe's consultative exam report, Ms. Maez's Function Report, a Third-Party Function Report (prepared by Ms. Maez's mother), treatment notes from Los Lunas Family Practice (which

Dr. McGaughey affirmed Dr. Parmley's step-two ratings.  *Id.*  Although Dr. McGaughey's Section I findings in his MRFCA differed slightly,[14] Dr. McGaughey affirmed Dr. Parmley's Section III assessment.  *Id.*

The ALJ similarly found Dr. McGaughey's assessment largely persuasive for the same reasons discussed above.  Tr. 88-89.

### B.     Consideration of Additional Evidence

On April 4, 2024, Ms. Maez requested a review of the ALJ's March 21, 2024, unfavorable decision.  Tr. 233-34.  On May 29, 2024, while her appeal was pending, Ms. Maez submitted to the Appeals Council for its consideration an April 23, 2024, Psychological Evaluation prepared by Clifford Morgan, Ph.D.  Tr. 55-74.  On June 18, 2024, Ms. Maez submitted to the Appeals Council Dr. Morgan's June 11, 2024, Medical Source Statement in which he assessed Ms. Maez's ability to do work-related mental activities based on diagnoses of ADHD; persistent depressive disorder; generalized anxiety disorder; specific learning disorder with impairment in reading, written expression and mathematics; and unspecified trauma and stress-related disorder.  Tr. 28-34.

On July 10, 2024, the Appeals Council notified Ms. Maez that it had denied her request for review and that the additional evidence she submitted "does not show a reasonable probability that it would change the outcome of the decision."  Tr. 19.  The Appeals Council indicated that did not exhibit this evidence or make it part of the record.  *Id.*

---

included Dr. Morgan's November 11, 2010, Psychological Evaluation), treatment notes from Enchantment Health Care, and Dr. Flynn's consultative exam report.  Tr. 138.

[14] Dr. McGaughey found that Ms. Maez was *markedly limited* in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions.  Tr. 143,153-54.

Ms. Maez argues that the Appeals Council's rejection of the additional evidence was improper because Dr. Morgan's April 23, 2024, Psychological Evaluation and June 11, 2024, Medical Source Statement are new, chronologically pertinent, and material thereby justifying review.[15]  Doc. 17 at 20.  Ms. Maez argues that this evidence postdates the ALJ's Unfavorable Decision and, therefore, was not before the ALJ.  *Id.*  Ms. Maez argues that the evidence is neither duplicative or cumulative of other evidence of record as it contains new evaluations and/or new opinions.  *Id.*  Ms. Maez argues the evidence is chronologically pertinent because it concerns impairments and limitations arising from the ALJ's assessed severe impairments.  *Id.* at 20-21.  Ms. Maez argues the evidence is material because it supports her testimony regarding her hypersensitivity and needing her mother to write down her daily chores, and because Dr. Morgan assessed numerous marked or extreme limitations regarding Ms. Maez's ability to do work-related mental activities that were not addressed in the ALJ's RFC and that if accepted would preclude work.  *Id.* at 21-22.  Ms. Maez argues, therefore, that the Appeals Council should have considered the additional evidence as part of its review.  *Id.*

The Commissioner contends that the Appeals Council did not reject the additional evidence and instead concluded that the evidence did not warrant review of the ALJ's decision.  Doc. 23 at 12-14.  The Commissioner contends that when the Appeals Council denies review, the Court should engage in a substantial evidence review of the entire administrative record, including the newly submitted evidence.  *Id.*  The Commissioner contends that substantial evidence supports the ALJ's decision notwithstanding Dr. Morgan's late-submitted evaluation and medical source statement.  *Id*.  Alternatively, the Commissioner contends that the additional evidence does not qualify for consideration in the first instance because it is duplicative of

---

[15] Ms. Maez also argues there is good cause for submitting the additional evidence to the Appeals Council.  Doc. 17 at 22.

evidence already in the record, not chronologically pertinent, and because Dr. Morgan's assessed

functional limitations are "entirely contrary" to the evidence of Ms. Maez's functioning during

the adjudicated period.  *Id.*

Under its regulations, the Appeals Council will only review a case if, among other things,

it receives additional evidence "that is new, material, and relates to the period on or before the

date of the hearing decision, and there is a reasonable probability that the additional evidence

would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[16]

Whether evidence qualifies for consideration by the Appeals Council under this standard is a

question of law subject to *de novo* review.  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir.

2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand

if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389

F.3d 1189, 1142 (10th Cir. 2004)).  If the evidence does qualify and the Appeals Council

erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new evidence. *Id.*

"If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in

judicial review." *Id.*  The Court will refer to this as the "*de novo*" standard of review.

The standard of review changes significantly, however, if the Appeals Council *did*

consider and exhibit the new evidence, but nonetheless determined that substantial evidence

supported the ALJ's decision.  In such a case, without consideration of the three requirements for

qualification, the Court would then perform its *own* substantial-evidence review of the entire

record, taking into account the new evidence that neither the ALJ nor the Appeals Council ever

---

[16] These regulations were amended. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 2016 WL 7242991 (Dec. 16, 2016) (effective January 17, 2017, with compliance required after May 1, 2017). The amendments added that the Appeals Council will only consider additional evidence if the claimant shows good cause for not informing the ALJ about the new evidence and submitting it to him or her. *Id.* §§ 404.970(a)(5), 416.1470(a)(5). The Commissioner does not argue, however, that Ms. Maez has failed to demonstrate "good cause" for not submitting the evidence earlier.

analyzed.  *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013); *Krauser*, 638 F.3d at

1328; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017).  The Court will refer to this as the

"substantial-evidence review" standard.

The Commissioner advocates for a "substantial-evidence review" based on the Appeals

Council's decision not to review the ALJ's decision.  This standard of review, however, is not

applicable here and the Commissioner's reliance on *Martinez v. Barnhart*, 444 F.3d 1201, 1207-

08 (10th Cir. 2006), in support is misplaced.  In *Martinez*, the Tenth Circuit explained that

because the Appeals Council explicitly made newly submitted treatment records *a part of the*

*record*, it was an implicit determination by the Appeals Council that the claimant had submitted

qualifying new evidence for consideration thereby making a substantial evidence review

appropriate by the reviewing court.  *Martinez*, 444 F.3d at 1207.  That is not the case here.  Here,

the Appeals Council explicitly did not make the additional evidence a part of the record, *i.e.,* "we

did not exhibit this evidence."  Tr. 19.  Nor did the Appeals Council even suggest that it

considered the additional evidence but instead found the additional evidence "d[id] not show a

reasonable probability that it would change the outcome of the decision"  *Id.*  The "reasonable

probability" standard is one that "relates to whether evidence qualifies for consideration (and

therefore review by the Appeals Council) and does not indicate how the Appeals Council

evaluated the evidence in conjunction with the rest of the record."  *Cordova v. Saul*, 19-CV-

00126 LF, 2020 WL 614577, at *4 (D.N.M. Feb. 10, 2020) (citations omitted).  Thus, in

determining that Ms. Maez's additional evidence did not satisfy the reasonable probability

standard or merit exhibiting, the Appeals Council implicitly disqualified the evidence from

consideration in a substantial evidence review.  *See Secatero v. Saul*, No. 19-CV-0087 SCY,

2020 WL 419463, at *5 (D.N.M. Jan. 27, 2010) (explaining that "the Appeals Council's

dismissal of the additional evidence's import [under the "reasonable probability" standard] indicates that it ultimately found the evidence did not qualify for consideration at all.") (quoting *Padilla*, 525 F. App'x at 712).

Because the Appeals Council did not consider the additional evidence in conjunction with a review of the entire record, the Court may not consider the additional evidence in a review of the denial of benefits "under the deferential substantial-evidence standards." *Chambers*, 389 F.3d at 1143. Instead, the Court is constrained to determine, under *de novo* review, whether the Appeals Council erroneously refused to consider the qualifying additional evidence. *Padilla*, 525 F. App'x at 712. If so, the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in light of the completed record.

### 1.     The Additional Evidence Is New

The Court finds that the additional evidence is new. "Additional evidence is new if it is not part of the claim(s) file as of the date of the hearing decision." *Hearings, Appeals and Litigation Law Manual* ("HALLEX") I-3-3-6(B)(2). Moreover, to be considered new, evidence must not be merely duplicative or cumulative of other evidence in the record. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Here, it is undisputed that Dr. Morgan's April 23, 2024, Psychological Evaluation and June 11, 2024, Medical Source Statement were not available to the ALJ at the time he made his decision. As to the former, the Commissioner argues that because Dr. Morgan noted that Ms. Maez's April 23, 2024, cognitive testing results were similar to his November 11, 2010, testing, that this information was already in the record before the ALJ. Doc. 23 at 13. The Court finds this argument unavailing. Here, Dr. Morgan's November 11, 2010, Psychological Evaluation predates the relevant period of time the ALJ adjudicated and the ALJ did not evaluate Dr. Morgan's November 11, 2010, testing as medical

opinion evidence or otherwise refer to it in his determination.[17]   Moreover, the context and

longitudinal perspective of Dr. Morgan's April 23, 2024, Psychological Evaluation differs from

the November 11, 2010, report.  For instance, Dr. Morgan explained in his April 23, 2024,

Psychological Evaluation that Ms. Maez had been unsuccessful in her work attempts and

unemployed for many years and sought an "update" of her status based on her recent denial of

disability benefits.  Tr. 57.  Dr. Morgan noted that certain psychosocial histories were originally

completed during his November 11, 2010, Psychological Evaluation, but that "[t]he information

is revised with updated information."  *Id.*  Dr. Morgan readministered many of the same

psychological tests, but also administered additional tests, *e.g.,* Wechsler Adult Intelligence

Scale-IV (WAIS-IV) Working Memory & Processing Speed Subtests and PTSD-Symptom

Scale-(Interview for DSM-5 (PSS-I-5).  Compare Tr. 57 and 372.  Dr. Morgan's 2024 diagnoses,

though largely identical to his 2010 diagnoses, *i.e.,* learning disorders in reading and

mathematics, depressive disorder, generalized anxiety disorder, and ADHD, added a diagnoses

of "unspecified trauma and stress related disorder."  Compare Tr. 64 and 377.  Last,

Dr. Morgan's 2024 recommendations were similar to those he made in 2010, but he added that it

would be helpful for Ms. Maez to consult with an attorney with her SSI application based on the

results of the evaluation.  Tr. 63.  As such, the Court finds that Dr. Morgan's April 23, 2024,

Psychological Evaluation is not duplicative or cumulative of evidence in the record and

constitutes "new" evidence within the meaning of 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

The Court similarly finds that Dr. Morgan's June 11, 2024, Medical Source Statement

regarding Ms. Maez's ability to do work-related mental activities, which is more restrictive than

---

[17] Dr. Morgan's November 11, 2010, Psychological Evaluation was included in treatment records from Los Lunas Family Practice, records the ALJ generally cited in his decision.  Tr. 87 (citing Ex. 3F).  The ALJ, however, did not refer to or specifically cite Dr. Morgan's November 11, 2010, Psychological Evaluation in his determination.

the findings of either of the nonexamining State agency psychological consultants and more specific than the findings of examining State agency psychological consultant Dr. Poe, is not duplicative or cumulative and, therefore, constitutes new evidence.

### 2.   The Additional Evidence Is Temporally Relevant

Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142. Significantly, in assessing chronological pertinence, the Tenth Circuit has not focused on whether the evidence pre-dated the ALJ's decision but instead focuses on whether the new evidence was pertinent to the issues that were before the ALJ at the time of the decision. *Padilla*, 525 F. App'x at 711. Here, both Dr. Morgan's April 23, 2024, Psychological Evaluation and June 11, 2024, Medical Source Statement bear upon the mental impairments considered by the ALJ during the relevant period, *i.e.,* Ms. Maez's ADHD, depressive disorder, generalized anxiety disorder, and learning disabilities. Additionally, Dr. Morgan explicitly notes and describes in those reports how Ms. Maez's mental impairments have functionally limited her ability to do work-related activities and impacted her attempts to work for many years. The Court, therefore, finds the additional evidence is pertinent to the issues before the ALJ at the time of his decision.

### 3.   The Additional Evidence is Material

Before 20 C.F.R. §§ 404.970 and 416.1470 were revised in 2017, evidence was considered "material" if there as a "reasonable *possibility* that it would have changed the outcome." *See Threet*, 353 F.3d at 1191 (emphasis added). But the revisions to these regulations effectively heightened the materiality standard, requiring a claimant to now show a "reasonable *probability*" that the additional evidence would have changed the outcome of the disability

claim. Thus, the materiality of the additional evidence hinges on whether there is a reasonable probability that it would have changed the outcome of Ms. Maez's disability claim.

The Court begins by comparing the ALJ's RFC determination to Dr. Morgan's opinions. Here, the ALJ found that Ms. Maez is capable of (1) understanding, remembering, and carrying out simple instructions in a non-production pace environment; (2) occasionally interacting with the public or coworkers; and (3) occasionally adapting to changes in a routine work setting. Tr. 86. The ALJ relied on the nonexamining State agency psychological consultants in making his assessment and what he described as "benign objective findings" and "essentially normal" psychiatric findings noted by various primary care providers.

Comparing these findings to Dr. Morgan's opinions, the Court finds that like Dr. Poe, Dr. Morgan found more severe limitations in Ms. Maez's ability to do work-related mental activities. For instance, Dr. Morgan assessed, *inter alia*, that Ms. Maez is *unable to meet competitive standards*[18] needed to do unskilled work in her ability to (1) remember work-like procedures; (2) maintain attention for two hour segments; (3) maintain regular attendance and be punctual within customary, usually strict tolerance; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms; (7) perform at a consistent pace without an unreasonable number and length of rest periods; (8) respond appropriately to changes in a routine work setting; and (9) deal with normal work stress. *Id.*

In support, Dr. Morgan explained that

Jessica has significant learning difficulties and mental health diagnoses that impact her ability to work. She has not been able to successfully work for many years.

---

[18] The form Dr. Morgan completed defines this level of ability as meaning "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." Tr. 31.

> She has been dependent on her parents for support.  She has not had help or services
> to assist her in order to become employable.
>
> . . .
>
> Cognitive testing indicates working memory impairment (1 percentile) and
> processing speed impairment (1 percentile).   Intelligence testing is within
> borderline range (75 SS Index).  ADHD testing showed significant impairment to
> extent of inattentiveness, impulsivity and sustained attention.  Within the last 2
> years, she has attempted to work as a waitress at Denny's but had difficulty and
> was terminated.

Tr. 31.  Dr. Morgan further explained that "Jessica has anxiety, depression and PTSD features (confirmed through psychological testing – see attached report) which significantly impact[] her ability to work competitively."  Tr. 32.

Ms. Maez argues that, had the ALJ incorporated meaningful limitations in one of more of these more restricted areas, Ms. Maez likely would have been found disabled since many of these abilities are critical to perform unskilled work.  Indeed, several of the functional limitations Dr. Morgan assessed would preclude Ms. Maez from working altogether.  According to the Program Operations Manual Systems ("POMS"), the following seven abilities in which Dr. Morgan assessed Ms. Maez unable to meet competitive standards are critical for performing unskilled work: (1) remember work-like procedures (locations are not critical); (2) maintain attention for extended period of 2-hour segments (concentration is not critical); (3) maintain regular attendance and be punctual within customary tolerances (these tolerates are usually strict) (maintaining a schedule is not critical); (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (there requirements are usually strict); and (7) respond

appropriately to changes in a routine work setting.  *See* POMS DI § 25020.010(B)(3)a, d, e, f, g, i, and m.

The Commissioner does not directly address the materiality of Dr. Morgan's opinions, focusing his argument instead on a substantial evidence analysis.  Doc. 23 at 14.  The Commissioner cites the same or similar primary care treatment records and reported activities of daily living the ALJ relied on in assessing Ms. Maez's ability to do work-related mental activities as evidence of inconsistency with Dr. Morgan's assessed limitations.  *Id.*  Dr. Morgan's assessment, however, is based on extensive psychological testing and objective results which confirm that Ms. Maez "has significant cognitive, academic and mental health issues which impact her ability to work."  Tr. 63.  Notably, Dr. Poe, who also administered a psychological test, *i.e.,* the WAIS-IV, had objective results similar to Dr. Morgan's,[19] and assessed that Ms. Maez "will likely have *moderate-to-severe* difficulty concentrating and persisting at tasks of basic work, interacting with the general public and/or coworkers, as well as adapting to changes in the workplace secondary to her presenting symptoms."  Tr. 425.  The ALJ did not have the benefit of Dr. Morgan's findings when he found Dr. Poe's assessed limitations less persuasive.[20]

Based on the foregoing, the Court finds that if the ALJ were to adopt even some of the additional limitations assessed by Dr. Morgan, Ms. Maez's RFC would be more restrictive and

---

[19] *See* fn. 8, *supra*.

[20] The ALJ discounted Dr. Poe's assessment, in large part, on "essentially normal" psychiatric findings found in primary care provider treatment records.  However, "mental status examinations (MSE) document a clinician's observations of the patient *at a particular point in time*."  *See McGehee v. Saul*, No. 18-cv-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019) (emphasis added).  As such, while it is entirely proper for an ALJ to consider MSE findings when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations, such findings are not necessarily dispositive to this analysis.  *See id.* (rejecting weighting of medical source's opinions due to purportedly inconsistent MSE findings); *see also, e.g.*, *Martinez v. Comm'r of Soc. Sec. Admin.*, No. 6:18-3332-CV-RK, 2020 WL 39199, at *2 (W.D. Mo. Jan. 3, 2020) ("Although these mental status reports suggest Plaintiff was capable of acting appropriately at particular moments in time, they do not speak to Plaintiff's ability to consistently appear for work, stay on task, and perform appropriately.")  *See Casas v. Saul*, No. 1:19-CV-01154-KRS, 2021 WL 107244, at *5 (D.N.M. Jan. 12, 2021).

could preclude employment altogether.  The Court, therefore, finds that the additional evidence is material and that there is a reasonable probability that it would change the outcome of Ms. Maez's disability claim.

### C.   Remaining Claim

Ms. Maez advances an additional argument in support of her Motion to Reverse or Remand.  However, because the Court concludes that remand is required as set forth above, it will not address the remaining claim of error.  *See Chambers*, 389 F.3d at 1143 (explaining that it is for the Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

### IV.  Recommendation

For all of the reasons stated above, the Court finds that Dr. Morgan's April 23, 2024, Psychological Evaluation and June 6, 2024, Medical Source Statement are new, chronologically relevant, and material, and that there is a reasonable probability that the additional evidence would change the outcome of the ALJ's decision.  The Court, therefore, recommends that the Ms. Maez's Motion to Reverse or Remand be **GRANTED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**